# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TERRY BARTHE AS THE SUCCESSOR TO THE RIGHTS OF RUTH WELCKER | CIVIL ACTION |
| VERSUS | NO: 17-182 |
| MUTUAL OF OMAHA INSURANCE COMPANY | SECTION: "S" (2) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. #58) is **GRANTED**. Plaintiff's causes of action related to defendant's denial of Ruth Welcker's claim for reimbursement for services rendered by God's Angels Sitting Service, including the associated bad faith claims, are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Quash Trial Subpoenas (Doc. #69) is **GRANTED** as to the subpoenas issued to Joe Thompson and Cindy Glenn. The motion is **DENIED** as to the subpoena issued to Mutual of Omaha Insurance Company.

## BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendant, Mutual of Omaha Insurance Company ("MOIC"). MOIC argues that it is entitled to summary judgment on plaintiff's claims related to the payment of God's Angels Sitting Service's bills and the related bad faith claims because plaintiff never submitted proof that she is entitled to the benefits she claims under the insurance policy at issue. It is also before the court on MOIC's motion to quash trial subpoenas that plaintiff issued to Joe Thompson, Cindy Glenn and MOIC.

Plaintiff, Terry Barthe, was the goddaughter of Ruth Welcker and is the beneficiary of Welcker's estate. In 2009, Welcker obtained a long-term care insurance policy from MOIC, and continued to pay the premiums until her death on January 29, 2016.

In April 2012, Barthe employed God's Angels to provide in-home care to Welcker, including homemaking services, feeding, toileting and bathing. Barthe alleges that God's Angels' workers completed a home health aide training course and provided care under the supervision of a registered nurse. God's Angels has a Private Employment Service license issued by the Louisiana Workforce Commission.

In September 2013, Barthe contacted MOIC to inform it that Welcker broke her hip and had been a patient at Touro Infirmary Hospital and Woldenberg Village. Barthe also informed MOIC that Welker had dementia and could no longer be left alone. Thus, Welcker would need constant care when she returned home.

In January 2014, almost two years after God's Angels began providing services to Welcker, Barthe mailed claim forms to MOIC seeking reimbursement for God's Angels' bills. MOIC received the claim packet on January 29, 2014.

In February 2014, MOIC asked God's Angels to provide a copy of its initial assessment of Welcker and its home health care agency license. In April 2014, MOIC received a copy of God's Angels' Private Employment Service license issued by the Louisiana Workforce Commission. In May 2014, MOIC again requested a copy of God's Angels' initial assessment of Welcker and its home health care agency license. Also, in May and June 2014, MOIC informed Welcker that it

needed God's Angels' initial assessment of Welcker and its home health care agency license to process her claim.

On August 21, 2014, MOIC wrote to Welcker explaining the resolution of her claim. MOIC denied Welcker's claim for God's Angels' bills, explaining that God's Angels' services were not covered because it is licensed as a Private Employment Service and does not meet the insurance policy's definition of "Home Health Care Agency." The letter also explained that MOIC would pay Welcker's claim for John Hainkel Adult Day Care's services. Further, MOIC denied Welcker's claims related to expenses incurred at Touro and Pulse Home Health Care because those bills were paid by Medicare and the policy does not cover care or treatment for which benefits are available under Medicare.

On December 6, 2016, Barthe filed this action against MOIC in the Civil District Court, Parish of Orleans, State of Louisiana alleging breach of contract and bad faith claims related to MOIC's failure to pay Welcker's claim for services rendered by God's Angels, and seeking reimbursement for the amount Welcker paid God's Angels, bad faith penalties, punitive damages and attorneys' fees.

MOIC removed the action to the United States District Court for the Eastern District of Louisiana alleging diversity subject matter jurisdiction under 28 U.S.C. § 1332, because the parties are citizens of different states and there is more than $75,000 in controversy. Barthe filed three supplemental and amending complaints. The Third Supplemental and Amending Complaint adds claims that MOIC improperly calculated the elimination days under the policy and seeks reimbursement for services provided by Guardian Home Health Care, Lincare Enteral Services, Lighthouse for the blind, Touro Home Care, and Angels on Assignment.

MOIC filed the instant motion for summary judgment arguing that Barthe's causes of action related to its denial of Welcker's claim for reimbursement for services rendered by God's Angels must be dismissed because the claim was properly denied as God's Angels does not meet the insurance policy's definition of home health care agency. Barthe argues that God's Angels provided Welcker with maintenance and personal care services and homemaking services, which are covered under the policy and that the policy is vague in terms of what is required for a home health care agency to be considered licensed.

## ANALYSIS

**I.     MOIC's Motion for Summary Judgment (Doc. #58)**

**A.  Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.    Contract Interpretation Under Louisiana Law**

The Supreme Court of Louisiana recognizes that "certain elementary legal principles apply in analyzing an insurance policy[,]" the first of which is "that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code." Green v. Johnson, 149 So.3d 766, 770 (La. 2014). In Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 112 So.3d 187, 192 (La. 3/19/13) (citations and quotations omitted), the Supreme Court of Louisiana explained the law applicable to contract interpretation:

> Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to

5

lead to absurd consequences. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.[1]

The MOIC long-term care insurance policy provides benefits for Qualified Long-Term Care Services, which includes:

1. **HOME HEALTH CARE BENEFIT** – After You satisfy the Elimination Period[2], We will pay the actual expenses incurred by You, up to the Home Health Care Daily Benefit amount, for each day You incur Home Health Care expense.

    \*   \*   \*

3. **HOMEMAKER SERVICES BENEFIT** – After You satisfy the Elimination Period, We will pay the Prevailing Expenses incurred by You, up to the Home Health Care Daily Benefit amount, for each day You incur Homemaker Services Expense. Benefits are limited to 3 visits per week, Monday through Sunday.

Barthe alleges that God's Angels provided home health care to Welcker that consisted of homemaking services, feeding, toileting and bathing. The policy defines "Home Health Care" as:

> medical and nonmedical services, provided to ill, disabled or infirmed persons in their residence. Such services may include Homemaker Services, assistance with Activities of Daily Living[3] and Respite Care[4] Services.

---

[1] It is undisputed that Louisiana law applies to the interpretation of the contract at issue.

[2] The "Elimination Period" is "the number of days of services that would otherwise be covered by this Policy, for which We will not pay benefits. The Elimination Period is shown on the Policy Schedule. The Elimination Period needs to be satisfied only once while Your Policy is in force."

[3] The policy provides that "Activities of Daily Living" are:

(a)  "Eating" means feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) after it has been prepared for You or by feeding tube or intravenously.
(b)  "Toileting" means getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene.
(c)  "Transferring" means moving into and out of a bed, chair or wheelchair.
(d)  "Bathing" means washing oneself by sponge bath; or in either a tub or shower,

6

Home Health Care is limited to:

a) nursing care provided by a registered nurse (RN), a licensed practical nurse (LPN), licensed vocational nurse (LVN), licensed chemotherapy specialist or licensed nutritional specialist;

b) physical or speech therapy provided by a licensed therapist; and

c) Maintenance or Personal Care[5] to the patient by a person other than a person living in Your residence, who has completed a home health aide training course and the care is under the supervision of a registered nurse.

NOTE: A Home Health Care practitioner whose specialty is not listed may be used if approved by Us prior to service being provided . . . The person providing Home Health Care cannot be a Family Member.

The policy defines "Homemaker Services" as:

services provided by a Home Health Care Agency to manage and maintain Your household when You are no longer capable of managing and maintaining Your household. Homemaker Services are limited to the following:

(a) Housekeeping services;
(b) Laundry services;
(c) Shopping;
(d) Cooking; and
(e) Transportation assistance.

---

        including the task of getting into or out of the tub or shower.
(e) "Dressing" means putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs.
(f) "Continence" means the ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag).

[4] Under the policy, "Respite Care" means "Confined Care of Home Health Care provided to You when those who normally care for You at home need temporary relief from caregiving."

[5] "Maintenance or Personal Care" is "any care, the primary purpose of which, is the provision of needed assistance with any of the disabilities as a result of which You are Chronically Ill (including protection from threats to health and safety due to Severe Cognitive Impairment)."

Barthe claims that God's Angels fits into subsection (c) under the Home Health Care Benefit, i.e. that its workers were home health aides who provided Welcker with homemaker services, assistance with the activities of daily living and maintenance or personal care under the supervision of a registered nurse. Barth also alleges that God's Angels' services to Welcker should be covered under the "Homemaker Services Benefit."

Subsection (c) under Home Health Care Benefit requires that the services be provided by home health aids. The policy defines a "Home Health Aide" as "a health worker on the staff of a Home Health Care Agency who performs Personal Care Services and Homemaker Services [and] is not a Physician, nurse or professional therapist." The definition of Homemaker Services requires that the services be provided by a "Home Health Care Agency." Thus, to be covered under either the Home Health Care Benefit or the Homemaker Services Benefit, the services must be provided by employees of a "Home Health Care Agency" as it is defined in the policy.

Under the terms of the policy, the "Home Health Care Agency" that employs home health aides must be:

> an agency or organization that is licensed to provide Home Health Care by the state or is accredited as a Home Health Care Agency or as a provider of Home Health Care by the National League of Nursing, American Public Health Association, or Joint Commission on the Accreditation of Hospitals.

The parties dispute whether God's Angels fits this definition, specifically whether it is an agency that is licensed to provide Home Health Care by the State of Louisiana.[6] Louisiana Revised Statutes § 40:2116.33 provides that home health agencies are "under the jurisdiction of the Louisiana Department of Health, which shall provide rules and regulations governing the operation of such

---

[6] Neither party argues that God's Angels is accredited as a Home Health Care Agency or as a provider of Home Health Care by the National League of Nursing, American Public Health Association, or Joint Commission on the Accreditation of Hospitals.

8

agencies or organizations." Pursuant to La. Rev. Stat. § 40.2116.32(A), the Louisiana Department of Health issues licenses which are required to "open, conduct, manage or maintain an agency or organization that meets the definition of a home health agency." La. Rev. Stat. § 40:2116.31(B)(3) defines "home health agency" as:

> a state-owned and operated agency, or a subdivision of such an agency or organization, or a private nonprofit organization, or a proprietary organization which provides for the skilled home health care to the public, under the order of a physician and in the place of residence of the person receiving the care, which includes at least skilled nursing and one other service listed in the minimum standards which may be physical therapy, speech therapy, occupational therapy, medical social services, home health aides, or such others as may be listed in the minimum standard.

God's Angels has a license issued by the Louisiana Workforce Commission to operate as a Private Employment Service. Such licenses are issued pursuant to La. Rev. Stat. § 23:101, *et seq.* "Employment service" is defined as an individual, company corporation, partnership, or agent thereof, "who for a fee: (a) [o]ffers or attempts to procure, directly or indirectly, employment for an applicant or candidate[;] (b) [p]rocures or attempts to procure an employee for an employer." A "person, company, corporation or partnership" must be licensed by the director of the Louisiana Workforce Commission to "operate, solicit or advertise an employment service in" the State of Louisiana. Id. at § 23:104. To apply for such a license, "[e]ach individual named as a licensee, manager, or on-site consultant shall demonstrate competent knowledge of the private employment service law and rules and regulations by scoring at least eighty percent on a written examination." Id. The director of the Louisiana Workforce Commission has the "power to regulate and supervise the operation of the business of employment services and to make precise and enforce orders, rules and regulations to effectuate the purpose" of the statutes pertaining to employment services. Id. at § 23:112(A).

9

The Louisiana Revised Statues provide a clear distinction between a home health care agency licensed by the Louisiana Department of Health and a Private Employment Service licensed by the Louisiana Workforce Commission. The MOIC long-term care insurance policy requires that a home health care agency be licensed by the state to provide home health care. In Louisiana, such a license must be issued by the Louisiana Department of Health. It is undisputed that God's Angels was not licensed by the Louisiana Department of Health to provide home health care, but rather was licensed by the Louisiana Workforce Commission to operate as a Private Employment Services. Because God's Angels does not meet the insurance policy's definition of a home health agency, MOIC correctly denied Welcker's claim for reimbursement of amounts she paid to God's Angels because the services were not covered under either the Home Health Care Benefit or the Homemaker Services Benefit.[7] As such, MOIC was not in bad faith for denying Welcker's claim for God's Angel's services. Thus, MOIC's motion for summary judgment is GRANTED, and Barthe's causes of action related to MOIC's denial of Welcker's claim for reimbursement for services rendered by God's Angels are DISMISSED.

## II. MOIC's Motion to Quash Subpoenas

MOIC moves to quash trial subpoenas issued by Barthe to Joe Thompson, Cindy Glenn and MOIC. MOIC argues that the subpoenas issued to Thompson and Glenn should be quashed because they do not comply with location requirements of Rule 45 of the Federal Rules of Civil Procedure

---

[7] God's Angels' services may have been covered under the Home Health Care benefit if Welcker had sought approval from MOIC prior to engaging God's Angel's service because the policy provides that "[a] Home Health Care practitioner whose specialty is not listed may be used if approved by [MOIC] prior to service being provided." However, Welcker did not seek prior approval from MOIC. Indeed, she did not submit a claim to MOIC for God's Angels' services until two years after God's Angels began providing her with services.

and that the subpoena issued to MOIC should be quashed because it does not designate an officer or specific person to serve as MOIC's corporate representative.

Rule 45(c)(1) of the Federal Rules of Civil Procedure provides that a subpoena may command a person to attend a trial only: "(A) within 100 miles of where the person, resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person is (i) a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." A court must quash a subpoena that "requires a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(ii). Further, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena[,]" and "[t]he court for the district where compliance is required must enforce this duty and impose sanctions . . . on a party or attorney who fails to comply." Id. at 45(d)(1).

Thompson is an employee of MOIC. He is not an officer of MOIC and is not a party to this litigation. Thompson is a resident of Omaha, Nebraska, which is more than 100 miles from the location of this court in New Orleans, Louisiana. Moreover, Thompson is not employed in, nor does he regularly transact business in person within 100 miles of New Orleans. Therefore, the subpoena issued to Thompson does not comply with the location requirements of Rule 45(c)(1), and MOIC's motion to quash the subpoena is GRANTED.

Glenn is an employee of MOIC. She is not an officer of MOIC and is not a party to this litigation. Glenn is a resident of Walnut, Iowa, which is more than 100 miles from New Orleans. Moreover, Glenn is not employed in, nor does she regularly transact business in person within 100

11

miles of New Orleans. Therefore, the subpoena issued to Glenn does not comply with the location requirements of Rule 45(c)(1), and MOIC's motion to quash the subpoena is GRANTED.

MOIC is a party to the litigation and will presumably have a corporate representative testify. Glenn and Thompson are listed on MOIC's witness and exhibit list. Doc. #42. Glenn appeared for as MOIC's corporate representative at its corporate deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. The motion to quash the subpoena issued to MOIC is DENIED, and MOIC must inform Barthe by June 13, 2018, whether Glenn or Thompson will testify as the corporate representative and whether the other will be called as a witness at trial.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. #58) is **GRANTED**. Plaintiff's causes of action related to defendant's denial of Ruth Welcker's claim for reimbursement for services rendered by God's Angels Sitting Service, including the associated bad faith claims, are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Quash Trial Subpoenas (Doc. #69) is **GRANTED** as to the subpoenas issued to Joe Thompson and Cindy Glenn. The motion is **DENIED** as to the subpoena issued to Mutual of Omaha Insurance Company.

New Orleans, Louisiana, this 11th day of June, 2018.

**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**